UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                  :
CHRISTOPHER BLANK,                :
                                  :
          Petitioner,             :   Civ. No. 15-3596 (NLH)
                                  :
     v.                           :   OPINION
                                  :
STEPHEN M. D'ILIO, et al.         :
                                  :
          Respondents.            :
_____:
```

APPEARANCES:
Christopher Blank
Prisoner No. 599537/987398B
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625
     Petitioner <u>Pro</u> <u>se</u>

Rocco C. Cipparone, Jr.
Law Office of Rocco C. Cipparone, Jr.
203-205 Black Horse Pike
Haddon Heights, New Jersey 08305
     Counsel for Petitioner[1]

Mario C. Formica
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, New Jersey 08201
     Counsel for Respondents

---

[1]  Mr. Cipparone was appointed by this Court to represent
Petitioner "for the limited purpose of submitting a reply to the
[Respondents'] Supplemental Answer."  (<u>See</u> Apr. 13, 2017 Memo.
Order at ¶ 3, ECF No. 21; <u>see also</u> May 18, 2016 Order Appointing
Counsel, ECF No. 14.)

HILLMAN, District Judge

I. INTRODUCTION

Petitioner Christopher Blank ("Petitioner") has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet., ECF No. 1.) Respondents Stephen D'Ilio and the Attorney General of the State of New Jersey ("Respondents") oppose the petition. (Answer, ECF No. 4.) For the reasons stated herein, the petition shall be denied and no certificate of appealability will issue.

II. BACKGROUND[2]

Shortly after midnight on July 13, 2006, Egg Harbor Police Officer Christopher Leary pulled over a vehicle in which Petitioner was riding as a passenger. State v. Blank, No. A-5815-07T4, 2011 WL 1376696, at *1 (N.J. Super. Ct. App. Div. Apr. 13, 2011). Officer Leary subsequently attempted to arrest Petitioner pursuant to an outstanding warrant for possession of stolen construction tools. Id. Petitioner resisted that arrest and ran away from Officer Leary on foot. Id. Officer Leary and various police officials, including, inter alia, Egg Harbor

_____

[2] The following facts are derived, primarily, from the opinion of the New Jersey Superior Court, Appellate Division denying Petitioner's direct appeal of his conviction and sentence. State court factual findings are presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). As Petitioner has not rebutted the factual findings of the Superior Court of New Jersey by clear and convincing evidence, this Court will rely on those findings.

2

Police Officers Clear Constantino and William Loder, continued

to pursue Petitioner in the hopes of effectuating his arrest.

Id. at *1-2.  During that subsequent pursuit, Petitioner

obtained possession of Officer Constantino's service weapon, and

used that gun to shoot Officers Leary and Constantino as they

attempted to arrest him.  Id. at *2.  Several hours later,

Petitioner again used that weapon to fire one bullet at Officer

Loder.  Id.  As a result of the foregoing:

> [Petitioner] was charged in Atlantic County Indictment
> No. 06-08-1914 with three counts of first-degree
> attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-
> 3a(1) and (2) (counts one, two and three); three counts
> of second-degree aggravated assault, N.J.S.A. 2C:12-
> 1b(1) (counts four, five and six); three counts of third-
> degree aggravated assault with a deadly weapon, N.J.S.A.
> 2C:12-1b(2) (counts seven, eight and nine); first-degree
> disarming a law enforcement officer, N.J.S.A. 2C:12-11
> (count ten); third-degree resisting arrest, N.J.S.A.
> 2C:29-2a(2) (count eleven); second-degree possession of
> a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a
> (count twelve); and fourth-degree possession of a weapon
> by a convicted person, N.J.S.A. 2C:39-7 (count
> thirteen).

Id. at *1.  During Petitioner's subsequent criminal trial:

> The police officers testified to the following facts.  A
> car cut in front of Egg Harbor Police Officer Christopher
> Leary's patrol car just after midnight on July 13, 2006.
> Leary recognized [Petitioner] as a passenger in the car
> and was aware of an outstanding warrant for his arrest
> for possession of stolen construction tools.  Leary
> executed a "high risk stop" by ordering the driver to
> turn off the car and both the driver and passenger to
> put their hands out through the windows.  Leary then
> ordered [Petitioner] to get out of the car and to put
> his hands on his head. As [Petitioner] was getting out
> of the car, Egg Harbor Police Officer Clear Constantino
> arrived on the scene to serve as back-up to Leary.  Upon

seeing that Leary was executing a high-risk stop and that his gun was drawn, Constantino also drew her gun and pointed it at [Petitioner].

Leary ordered [Petitioner] to keep his hands on his head, walk backwards toward the sound of Leary's voice and, once he was in front of Leary, to get on his knees and cross his feet. [Petitioner] was compliant up to this point, although he repeatedly asked Leary, as Leary testified, "[w]hy all this caution?"

After exiting the car, [Petitioner] went down on his knees but would not cross his feet. Leary then holstered his weapon and attempted to handcuff [Petitioner]. After Leary cuffed one of his hands, [Petitioner] began to resist and would not allow his other hand to be cuffed. The officers hit and kneed [Petitioner] in an effort to subdue and handcuff him. Although Constantino sprayed [Petitioner] with pepper-spray, [Petitioner] continued to struggle. [Petitioner] eventually broke free and ran to the side of an abandoned house. The officers ran after [Petitioner] and caught up with him in the yard of the abandoned house.

After the police caught up with [Petitioner], a struggle ensued. Leary put his arm around [Petitioner's] neck in an attempt to secure him until additional back-up arrived. Just as Leary had gotten [Petitioner] in a choke hold, Constantino shouted that [Petitioner] had her gun, which he had taken from her holster.

[Petitioner] shot Constantino three times beneath her bullet-proof vest, once in her right side into her abdomen and twice in her right thigh. Leary released [Petitioner] in order to draw his own weapon, but he was immediately shot by [Petitioner] into his bullet-proof vest covering his chest. Leary yelled for Constantino to take cover, and both officers ran from the area to wait for help to arrive.

After shooting at Leary and Constantino, [Petitioner] ran away and encountered Egg Harbor Police Officer William Loder, who was on patrol and had responded to the scene. Loder shone a spotlight on [Petitioner] and ordered him to stop and identify himself. When [Petitioner] refused, Loder repeatedly ordered [Petitioner] to show his hands. [Petitioner] did not

respond, headed toward the woods and then fell to the ground. When [Petitioner] got up, he pointed a gun at Loder. Loder shot at [Petitioner] five times, hitting him once in the arm. [Petitioner] then shot at Loder, narrowly missing his head. [Petitioner's] gun jammed after [Petitioner] fired once at Loder. [Petitioner] then discarded the gun and ran into the woods.

Police officers, SWAT teams, and K-9 officers combed the area in search of [Petitioner]. Egg Harbor Police Officer James Knight testified that his K-9 dog led him to [Petitioner], and upon locating him, [Petitioner] began "fighting [and] punching the dog." Before police subdued him, [Petitioner] received a serious dog bite.

Id. at *1-2.

[Petitioner, on the other hand,] testified that after the officers caught up with him at the house, they handcuffed him to a fence and kicked and beat him to such a degree that he did not think he would survive. [Petitioner] said he was hit on the head with a metallic object and fell to the ground. [Petitioner] testified that while on his knees he found a gun on the ground, picked it up and fired at the officers. After shooting at the officers, [Petitioner] claims that he shot the handcuffs off of the fence, broke free and jumped over the fence.

[Petitioner] testified that he fired one shot at Loder in self-defense and then discarded the gun.

Id. at *2.

As the foregoing makes clear, Petitioner, during trial, readily and consistently acknowledged: (i) that he obtained possession of Officer Constantino's firearm as Officers Leary and Constantino attempted to arrest him (see also, e.g., Jan. 23, 2008 Trial Tr. 208:15-18, ECF No. 4-8); (ii) that he shot Officers Leary and Constantino with that gun (see, e.g., Jan. 24, 2008 Trial Tr. 50:20-23, ECF No. 4-9); and (iii) that he

also used that weapon to fire one bullet at Officer Loder several hours later. (Id. at 92:2-5.) Petitioner claimed that these actions were done in self-defense and out of fear for his personal safety. (See, e.g., Pet'r's Aug. 24, 2015 Reply Br. at 6, ECF No. 8 (the "main factual issue at trial" was whether Petitioner was justified in his "use of force in self-defense.").)

On the tenth day of trial proceedings, "the jury found [Petitioner] guilty of counts one through twelve [of the charges set forth in the indictment detailed supra], and after [Petitioner] waived his right to a jury trial, the court found [Petitioner] guilty of count thirteen." Blank, 2011 WL 1376696, at *1. In other words, Petitioner "was convicted of disarming [Officer Constantino] and shooting her three times, shooting [Officer Leary] in his bullet-proof vest and shooting near the head of [Officer Loder] as he tried to arrest [Petitioner] on an outstanding warrant." Id. Petitioner was sentenced "to an aggregate extended term of eighty-five years with an eighty-five percent parole bar" as a result of the foregoing. Id.

Petitioner subsequently appealed his conviction and sentence to the Appellate Division, arguing, inter alia, that the trial court: (i) "erred in failing to charge attempted passion/provocation manslaughter to the jury[;]" and (ii) "erred in denying the jurors permission, during deliberations, to re-

enact the removal of [Officer Constantino's] gun from the holster." (See Pet'r's Appeal Br. at 13, 21, ECF No. 4-16 (capitalization in original omitted).) The Appellate Division affirmed Petitioner's conviction and sentence on April 13, 2011. Blank, 2011 WL 1376696, at *11. The New Jersey Supreme Court denied certification of Petitioner's direct appeal on September 5, 2011. State v. Blank, 27 A.3d 952 (N.J. 2011) (table).

Petitioner thereafter filed a post-conviction relief ("PCR") petition in the state court challenging, inter alia, his trial counsel's failures to: (i) use peremptory challenges to excuse numerous jurors who had affiliations with law enforcement; and (ii) present expert testimony regarding the distance at which Petitioner's handcuffs were shot. (See Pet'r's PCR Br. at 17, 36, ECF No. 4-20.) The same judge who presided over Petitioner's criminal trial, the Honorable Michael A. Donio, J.S.C., denied Petitioner's PCR petition, without an evidentiary hearing, for the reasons which he set forth on the record on May 24, 2013. (May 24, 2013 PCR Hr'g Tr. 51:14-71:21, ECF No. 4-15.) The Appellate Division affirmed the denial of Petitioner's PCR petition. State v. Blank, No. A-4717-12T4, 2014 WL 6474347, at *1 (N.J. Sup. Ct. App. Div. Nov. 20, 2014), as amended (Dec. 4, 2014). The New Jersey Supreme Court denied certification of Petitioner's PCR appeal on January 7, 2015. State v. Blank, 112 A.3d 593 (N.J. 2015) (table).

Petitioner filed his § 2254 petition, pro se, on May 28, 2015. (ECF No. 1.) Petitioner's habeas petition sets forth four grounds which he claims entitle him to habeas relief:

> Ground One: Denial of right to fair trial and due process of law, based on trial judge's [denial of the jury's request during] jury deliberations [to have the safety lock from Officer Constantino's gun removed] wherein jurors were prevented from accessing evidence and therefore prevented from re-enacting key events.
>
> Ground Two: Denial of effective assistance of counsel, based on trial counsel's failure to exercise [preemptory] challenges to remove jurors with connection[s] to law enforcement.
>
> Ground Three: Denial of effective assistance of counsel, based on trial counsel's failure to present expert witnesses to prove that handcuffs were shot from close range.
>
> Ground Four: Denial of right to fair trial and due process of law, based on trial judge's failure to issue jury charge regarding lesser offense of attempted passion/provocation manslaughter.

(Pet. at ¶ 12, ECF No. 1 (capitalization in original omitted).) On June 18, 2015, this Court ordered Respondents to "file a full and complete answer [responding to each of the four grounds] asserted in the petition." (ECF No. 2.) Respondents filed their original answer on July 20, 2015. (ECF No. 4.) That answer did not, however, "directly respond to Petitioner's complaint that two of the jurors had direct connections to the State's witnesses[,]" in spite of the fact that "Juror No. 9 and Juror No. 5 admitted during voir dire that they knew witnesses for the prosecution." (See April 26, 2016 Order at ¶¶ 4, 5.)

Petitioner filed a reply, pro se, to Respondents' July 20th answer on August 24, 2015. (ECF No. 8.)

On April 26, 2016, this Court ordered Respondents to file an additional supplemental answer "responding to Petitioner's allegations that he received ineffective assistance of counsel due to his trial counsel's failure to use a preemptory challenge to remove jurors who had connections to the State's witnesses." (Apr. 26, 2016 Order at 2-3, ECF No. 9.) Respondents filed their supplemental answer on May 11, 2016. (ECF No. 10.)

By way of a letter dated May 4, 2016, Petitioner requested that this Court appoint him counsel "for the limited purpose of filing a Supplemental Reply" to Respondents' supplemental answer. (ECF No. 12.) On May 18, 2016, this Court appointed attorney Rocco C. Cipparone, Jr. to serve as Petitioner's counsel for the express and "limited purpose of preparing [that] Supplemental Reply." (See June 16, 2016 Order, ECF No. 16.)

Petitioner – through his appointed habeas counsel – filed a supplemental reply on July 14, 2016. (ECF No. 17.) Petitioner thereafter, on September 15, 2016, filed an additional supplemental reply, pro se. (ECF Nos. 18, 19.) At that time, Petitioner also filed a motion, pro se, to expand the record to include an additional self-prepared declaration dated September 5, 2016, which details [Petitioner's] purported discussions with his trial counsel about Juror Nos. 5 and 9 during voir dire.

(ECF No. 20-1.) Petitioner requested that "the Court consider his [pro se supplemental] submissions as though they were attached to his appointed attorney's Supplemental Reply." (See Apr. 13, 2017 Mem. Order at ¶ 4, ECF No. 21.)

On April 13, 2017, this Court entered a Memorandum Order denying Petitioner's September 5th pro se applications without prejudice. (ECF No. 21.) In so doing, this Court noted that it "appointed [Petitioner] counsel for the express purpose of filing of supplemental reply to streamline this matter and ensure that the parties' positions were concisely and completely presented for this Court's consideration." (See Apr. 13, 2017 Mem. Order at ¶ 5, ECF No. 21.) Nonetheless, in order "to ensure that any and all relevant and appropriate arguments [were] presented" in that supplemental reply, this Court afforded Petitioner an additional "30 days to consult with [his appointed habeas counsel] and, should counsel deem appropriate, counsel may file an amended supplemental reply." (See Apr. 13, 2017 Mem. Order at ¶ 5, ECF No. 21.) Petitioner declined to submit an amended supplemental reply in response to the Court's April 13, 2017 Memorandum Order.

III. STANDARD OF REVIEW

28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody, pursuant to the judgment of a state court, "only

on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706, reh'g denied, 134 S.

Ct. 2835 (2014). This Court must presume that the state court's factual findings are correct unless Petitioner rebuts this presumption through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

IV. ANALYSIS

As noted above, Petitioner's habeas petition presents four grounds for this Court's review. Each of these grounds will be addressed in turn.

1. Ground Four - Failure to Charge Lesser-Included Offense of Manslaughter

Petitioner, in Ground Four, asserts that he was denied his right to a fair trial and due process of law based on the trial court's failure to issue a jury charge, sua sponte, for the lesser-included offense of attempted manslaughter. (Pet. at ¶ 12, Ground Four, ECF No. 1.) Petitioner presents the following facts in support of that claim:

> According to his trial testimony, [P]etitioner acted in
> self-defense after being provoked by police officers.
> Specifically, [P]etitioner testified, among other
> things, that the police officers in question employed
> excessive force against him, causing [P]etitioner to
> defend himself and flee the area. Thus, [P]etitioner
> claimed, in essence, that the excessive force used
> against him constituted sufficient "provocation" to
> justify [P]etitioner's resulting actions. Despite that
> factual backdrop, the trial court failed to charge the
> jury regarding the option of convicting [P]etitioner on
> the lesser offense of attempted passion/provocation
> manslaughter.

(Id.)  The arguments and claims advanced by Petitioner in Ground
Four of his current habeas petition were considered - and
rejected - by the Appellate Division on direct appeal:

[Petitioner] argues . . . that the trial court erred by
not sua sponte charging the jury with the lesser offense
of attempted passion/provocation manslaughter because
the facts 'clearly indicate' that this charge was
appropriate.  The court gave a self-defense charge, but
not the lesser-included offense charge [Petitioner] now
claims was required.  When a defendant does not request
a lesser-included offense charge, a court need only
include the charge if "the facts 'clearly indicate' the
appropriateness of that charge. . . ."  State v. Choice,
98 N.J. 295, 299 (1985).  Attempted passion/provocation
manslaughter has four elements: "the provocation must be
adequate; the defendant must not have had time to cool
off between the provocation and the slaying; the
provocation must have actually impassioned the
defendant; and the defendant must not have actually
cooled off before the slaying."  State v. Mauricio, 117
N.J. 402, 411 (1990). When a defendant does not request
a passion/provocation charge, the court must first find
that the first two objective elements are "clearly
indicated" by the evidence before charging the jury with
passion/provocation manslaughter.  State v. Robinson,
136 N.J. 476, 491 (1994).  In assessing these objective
factors, courts should view the evidence in a light most
favorable to defendant.  Mauricio, supra, 117 N.J. at
412.

. . . .

Viewing the evidence in a light most favorable to
[Petitioner] and based on his version of events, he
claims he was first mistreated by the police officers
when they sprayed him with pepper spray, kicked and beat
him after he resisted arrest.  The police, however, have
the right to use force when necessary.  "[N]either a
lawful arrest nor the use of necessary force to
accomplish the arrest can constitute provocation
justifying a finding of manslaughter."  State v. Madden,
61 N.J. 377, 398 (1972).  The police were attempting to
arrest [Petitioner] pursuant to a lawful warrant.  A
person is not entitled to resist an arrest, even if it

is not a lawful arrest. <u>State v. Kane</u>, 303 N.J. Super.
167, 182 (App. Div. 1997). Thus, an arrest by a law
enforcement officer in the course of his or her official
duties cannot serve as provocation for the killing of
that officer. Because the evidence viewed in a light
most favorable to [Petitioner] does not support
provocation, the trial court did not commit error by not
<u>sua</u> <u>sponte</u> giving a passion/provocation charge.

<u>Blank</u>, 2011 WL 1376696, at *3.

In <u>Beck v. Alabama</u>, 447 U.S. 625 (1980), the United States
Supreme Court determined that defendants in a capital case
possess a constitutional right to have the jury instructed on a
lesser-included offense. <u>Id.</u> at 638; <u>accord</u> <u>Kontakis v. Beyer</u>,
19 F.3d 110, 119 (3d Cir. 1994). In a footnote, the <u>Beck</u> Court
expressly reserved judgment on "whether the Due Process Clause
would require the giving of such instructions in a non-capital
case." <u>Beck</u>, 447 U.S. at 638 n.7. As such, <u>Beck</u> stands for the
proposition that "defendants in a <u>capital</u> case possess a
constitutional right to have the jury instructed on a lesser
included offense." <u>Scott v. Bartkowski</u>, No. 2:11-cv-3365 (SRC),
2013 WL 4537651, at *13 (D.N.J. Aug. 27, 2013) (emphasis added).
The Supreme Court has not, however, recognized that criminal
defendants in non-capital cases have a due process right to jury
instructions on lesser-included offenses. <u>Id.</u>[3]

---

[3] Although the Third Circuit has extended <u>Beck</u> to noncapital
cases, <u>see</u> <u>Vujosevic v. Rafferty</u>, 844 F.2d 1023 (3d Cir. 1988),
§ 2254(d)(1) does not permit this Court to grant habeas relief
on the basis of circuit precedent. <u>See</u> <u>Marshall v. Rodgers</u>, 569
U.S. 58, 64 (2013) (holding that circuit precedent may not be

As this is not a capital case, the Appellate Division's finding that "the trial court did not commit error by not <u>sua sponte</u> giving a passion/provocation charge" is not an unreasonable application of the clearly-established federal law set forth in <u>Beck</u>.  <u>See</u> <u>Urcinoli v. Cathel</u>, No. 3:05–cv-4776 (GEB), 2010 WL 5253524, at * 17 (D.N.J. Dec. 17, 2010) ("because Petitioner did not face the death penalty, Supreme Court precedent did not require the instruction on the lesser included offenses of manslaughter."); <u>accord</u> <u>Scott</u>, 2013 WL 4537651, at *12-13; <u>see also</u> <u>Wanger v. Hayman</u>, No. 2:09–cv-6307 (SRC), 2011 WL 32496, at *4 (D.N.J. Jan. 3, 2011) (collecting cases).

The Supreme Court has also stated that "an error in the instructions to the jury" may violate due process.  <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977).  "The question [during habeas review] is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violate[d] due process."  <u>Id.</u> (citation and internal quotation marks omitted); <u>accord</u> <u>Waddington v. Sarausad</u>, 555 U.S. 179, 191 (2009).  <u>Henderson</u> makes clear: (i) that it is the rare case in which "an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state

---

used under § 2254(d)(1) "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.").

court's judgment[;]" and (ii) that "[a]n omission, or an incomplete instruction, is [even] less likely to be prejudicial than a misstatement of the law." Id. at 154. Moreover, as a general matter, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).

Here, it fully appears that the Appellate Division correctly concluded that the evidence adduced at Petitioner's trial could not – as a matter of New Jersey state law – "constitute provocation justifying a finding of manslaughter." Blank, 2011 WL 1376696, at *3. Petitioner readily acknowledges that the underlying factual findings which support this conclusion, i.e., that the Egg Harbor police officers used force while attempting to effectuate Petitioner's lawful arrest, are correct. Moreover, even if Petitioner disagreed with the Appellate Division's factual determinations regarding the circumstances his arrest, those findings are presumed to be correct, see 28 U.S.C. 2254(e)(1), and Petitioner has failed to present any evidence which rebuts this presumption.

Furthermore, even if this Court disagreed with the Appellate Division's reasoning on this state law issue – and it does not – an error of state law cannot form the basis for habeas relief. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."). Indeed, "[t]he only question for [this Court's consideration] is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973) (internal quotations omitted).

In light of the foregoing considerations, there is no basis for this Court to conclude that trial court's failure to sua sponte charge the jury with the lesser-included offense of passion/provocation manslaughter[4] infected Petitioner's entire trial such that it violated Petitioner's right to due process of law. See Wyatt v. Warren, No. 2:11-cv-7112 (DRD), 2015 WL 1816504, at *6-7 (D.N.J. Apr. 22, 2015) (no due process violation where evidence adduced during state criminal trial "did not provide a rational basis for a manslaughter instruction."); Peoples v. Cathel, No. 1:05-cv-5916 (JBS), 2006 WL 3419787, at *6-8 (D.N.J. Nov. 21, 2006) ("the absence of a jury instruction on the lesser included offense of manslaughter, when viewed in the context and evidence of this case, did not so infect the trial with unfairness as to violate Petitioner's due

---

[4]  To be clear, none of the officers died as a result of their wounds, making the reference to a passion/provocation manslaughter instruction somewhat of a misnomer.  This Court's review of state law indicates the passion/provocation defense and suggested corresponding jury charge are equally applicable, when warranted, to a charge of attempted murder.

process rights."). As such, and for the additional reasons detailed above, this Court will deny habeas relief as to Ground Four.

2. Ground One – Trial Court's Denial of Jurors' Request to Remove the Safety Lock from Officer Constantino's Gun

In Ground One, Petitioner asserts that he was denied the right to fair trial and due process of law because the trial court denied the jurors' request during jury deliberations to have the safety lock from Officer Constantino's gun removed. (Pet. at ¶ 12, Ground One, ECF No. 1.) Petitioner claims that the denial of this request "prevented jurors from accessing important evidence and from reenacting keys events[.]" (Pet'r's Aug. 24, 2015 Reply Br. at 2, ECF No. 8.)

The argument advanced by Petitioner in Ground One was examined in great detail – and rejected – by the Appellate Division on direct appeal. See Blank, 2011 WL 1376696, at *5-6. As noted by the Appellate Division, during trial:

> The State claimed that [Petitioner] took [Officer Constantino's] gun . . . out of Constantino's holster while she and [Officer] Leary were trying to restrain him. The State's firearms witness, Sergeant Charles DeFebbo of the Atlantic County Prosecutor's Office, an expert in the use and handling of the gun involved, testified and also demonstrated that [Petitioner] could have removed the officer's gun from her holster. [Petitioner], on the other hand, claimed that Constantino was beating him with her gun when it dropped to the ground. [Petitioner] testified he found the gun on the ground, picked it up and fired at the officers. Defense counsel also argued that it would be difficult, if not impossible, for someone in [Petitioner's]

position to remove a gun from a holster as alleged by
the State.

Blank, 2011 WL 1376696, at *5.

During subsequent jury deliberations, the jury presented
the trial judge with a note which asked "can we take or can the
lock be taken off of the gun[?]"[5]  Id.  The trial judge, "after
conferring with counsel from both sides, simply wrote 'no' on
the note" and returned it to the jury.  Id.  Because "the jury's
questions was not preserved and the discussion of how to handle
the question was not conducted on the record[,]" the Appellate
Division – prior to rendering its substantive decision denying
Petitioner's direct appeal – remanded the matter to the trial
court "for a reconstruction of the in-chambers discussion of
this jury question."  Id. at *5 n.1.

At the subsequent reconstruction hearing held by the trial
court on December 4, 2009, Judge Michael A. Donio indicated that
he had "a very vivid recollection of that note[,]" that the note

---

[5]  While it fully appears that this request was made so that the
jury could "re-enact the removal of the officer's gun from her
holster[,]" Blank, 2011 WL 1376696, at *5, the precise reasoning
of the jury ultimately remains unclear.  The trial judge posited
that the jurors wanted to "see how easy it is to take the gun
out of the holster" and whether that process was consistent with
the testimony of one of the State's witnesses.  (Dec. 4, 2009
Hr'g Tr. 7:7-7:16, ECF No. 4-14.)  Petitioner's trial counsel
also believed that the jury's request "went to [witness]
credibility[.]"  (Id. at 10:24-11:4.)  Petitioner similarly
claims that the jurors made this request "to assess the
credibility/versions of both [P]etitioner and the police
officers."  (Pet. at ¶ 12, Ground One, ECF No. 1.)

simply said "can we take or can the lock be taken off the gun[,]" and that "when this note came from the jury, [he] called the lawyers into [his] chambers" to discuss that request. (Dec. 4, 2009 Hr'g Tr. 6:23-7:3, ECF No. 4-14.) Judge Donio further indicated that during the subsequent in-chambers conference with counsel, the assistant prosecutor "reminded [him] that the bullets to the weapon were also in evidence." (Id. at 7:20-21.) In light of this consideration, Judge Donio determined that he would not allow "the locking mechanism [to] be taken off the gun period." (Id. at 7:21-8:3.)

Petitioner's trial counsel, Mark Roddy, indicated that his recollection of events was "pretty consistent" with Judge Donio's. (Id. at 12:14-15.) Mr. Roddy also made clear that he did not, at any point – either on the record or in chambers – object to the trial court's determination that the safety lock placed on Officer Constantino's gun would not be removed for the jurors. (Id. at 12:15-13:17.) The assistant prosecutor similarly deferred to the Judge Donio's "clear and concise memory on this issue[.]" (Id. at 18:16-17.)

The Appellate Division, taking into account the additional evidence and information adduced at the reconstruction hearing, analyzed Petitioner's Ground One claim as follows:

> The court refused to take the lock from the gun as
> requested by the jury because the jury also had live
> ammunition in evidence. . . .

. . . .

> Although the better practice would have been to
> accommodate the jury's wishes if practical, the denial
> of the request without further inquiry does not require
> reversal because it was not "clearly capable of
> producing an unjust result." [N.J. Ct.] R. 2:10-2. Even
> if [Petitioner] picked up Constantino's gun from the
> ground, he would still have exercised unlawful control
> over it and therefore be culpable of disarming an officer
> and firing the officer's gun.   N.J.S.A. 2C:12-11a;
> N.J.S.A. 2C:12-11b.
>
> We agree with the State's argument that whether
> [Petitioner] picked the gun off the ground or took it
> out of Constantino's holster is irrelevant because both
> constitute disarming a law enforcement officer in that
> the gun was either in her actual or her constructive
> possession.

Blank, 2011 WL 1376696, at *6.

As an initial matter, it appears that this Court is

precluded from considering Petitioner's Ground One-related

claims under the doctrine of invited error.  This doctrine

prevents a habeas petitioner from raising a claim challenging an

action of the trial court which was invited or induced by that

petitioner or by that petitioner's attorney.  See, e.g., United

States v. Maury, 695 F.3d 227, 256-57 (3d Cir. 2012); see also

Cusumano v. McFarland, No. 1:04-cv-5080 (RBK), 2006 WL 1455785,

at *4-5 (D.N.J. May 18, 2006).  This doctrine provides an

independent basis for this Court to reject claims raised in §

2254 habeas matters.  See, e.g., York v. O'Llio, No. 2:13-cv-

7609 (JLL), 2016 WL 5938700, at *10-11 (D.N.J. Oct. 11, 2016),

cert. of appealability denied (3d Cir. Nov. 3, 2016); Burns v. Warren, No. 1:13-cv-1929 (RBK), 2016 WL 1117946, at *28-29 (D.N.J. Mar. 22, 2016); Reddick v. Warren, No. 2:12-cv-7875 (SDW), 2016 WL 29261, at *12 n.3 (D.N.J. Jan. 4, 2016); Cusumano, 2006 WL 1455785, at *4-5.

Here, to the extent Petitioner's assertion that Judge Donio's denial of the jury's request to remove the lock from the firearm admitted into evidence prevented jurors from accessing important evidence and reenacting keys events during jury deliberations might otherwise have merit, that claim would still remain subject to rejection under the invited error doctrine. Indeed, the information adduced at the reconstruction hearing unquestionably demonstrates: (i) that Judge Donio requested and received the input of Petitioner – through his counsel – on how to address the jurors' request to remove the lock from Officer Constantino's weapon; and (ii) that Petitioner's counsel never expressed any dissatisfaction regarding the trial court's denial of that request, much less lodged any formal objection. Indeed, because "Petitioner, through counsel, consented to and approved of the course of action taken . . . he cannot [now] cry foul as to the action in question." Reddick, 2016 WL 29261, at *12 n.3.

Furthermore, even if Petitioner's Ground One arguments were not barred under the invited error doctrine, they would still fail to provide a basis for this Court to grant habeas relief.

Initially, this Court notes that "the trial judge develops a relationship with the jury during the course of a trial that places him or her in a far better position than an appellate court to measure what a given situation requires." Government of the Virgin Islands v. Dowling, 814 F.2d 134, 137 (3d Cir. 1987). This is particularly so with respect to issues of courtroom safety. See, e.g., Saunders v. D'Illio, No. 1:15-cv-2683 (JBS), 2018 WL 1251629, at *9 (D.N.J. Mar. 12, 2018).

Even more significantly, Petitioner cites no federal precedent that constitutionally entitles him to have had the lock from a working firearm removed pursuant to a request made by the jury during deliberations. To be clear, Petitioner cites only one case in support of Ground One, In re Winship, 397 U.S. 358 (1970). (See Pet'r's Aug. 24, 2015 Reply Br. at 2-3, ECF No. 8.) Petitioner claims that Winship stands for the proposition that "[t]he basic function of the jury is to determine whether the State has met its burden of proving its case beyond any and all reasonable doubt[]" and that "[i]n order to discharge that function, the jury obviously needs unfettered access to key evidence." (Id.) This Court is unable to agree with Petitioner's interpretation of the clearly-established law set forth in Winship. That is because in Winship, the Supreme Court considered "the single, narrow question whether proof beyond a reasonable doubt [was] required during the adjudicatory

stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." Winship, 397 U.S. at 359 (internal quotation marks omitted). In resolving this question in the affirmative, the Winship Court held only "that, where a 12-year-old child is charged with an act of stealing which renders him liable to confinement for as long as six years, then, as a matter of due process . . . the case against him must be proved beyond a reasonable doubt." Id. at 368. Winship, therefore, in no way, provides support for Petitioner's Ground One assertion that he was deprived of the right to a fair trial and due process when Judge Donio denied the jurors' request to have the safety lock from Officer Constantino's gun removed.

To the extent Judge Donio's denial of the jury's request to unlock Officer Constantino's firearm nonetheless represents a constitutional violation – and Petitioner has failed to provide this Court with any basis to conclude that it does – the trial court's denial of that request would still fail to provide a basis for this Court to award habeas relief. Indeed, when raised on collateral review, errors of even a constitutional dimension will be considered harmless and thus will not warrant habeas relief "unless [the alleged constitutional error] had a substantial and injurious effect or influence in determining the jury's verdict." Fry v. Piller, 551 U.S. 112, 116 (2007); see

also <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 631 (1993); <u>accord</u> <u>Neder v. United States</u>, 527 U.S. 1, 8 (1999) ("there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.")  This Court fully agrees with the Appellate Division that Judge Donio's denial of the jury's request was not "clearly capable of producing an unjust result" because ultimately, the facts at trial undisputedly demonstrated that Petitioner exercised unlawful control over Officer Constantino's weapon.  This Court must defer to this "holding because it was not in 'conflict with the reasoning or holdings of [Supreme Court] precedent' and the court did not 'appl[y] harmless-error review in an objectively unreasonable manner.'"  <u>Albrecht v. Horn</u>, 485 F.3d 103, 135 (3d Cir. 2007) (quoting <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17–18 (2003).

In light of the forgoing, Ground One of Petitioner's habeas petition provides no basis for this Court to grant habeas relief because the arguments advanced in support of this claim were "adjudicated 'on the merits' in state court" and Petitioner has failed to demonstrate that "the state court's adjudication [of Petitioner's Ground One assertions] 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established <u>Federal</u> law.'").  <u>See</u> <u>Johnson v. Lamas</u>, 850 F.3d 119, 133–34 (3d Cir. 2017) (quoting 28 U.S.C. 2254(d)(1))

(emphasis added).  As such, and for the additional reasons set forth above, the Court will deny habeas relief as to Ground One.

3. Grounds Two and Three - Ineffective Assistance of Counsel

In Grounds Two and Three of his habeas petition, Petitioner asserts that he received ineffective assistance from his trial attorney, Mark Roddy.  These claims are governed by the two-prong test set forth in the Supreme Court's opinion in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner first "must show that counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687; see also United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007).  Second, a petitioner must additionally demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." Strickland, 466 U.S. at 687; Shedrick, 493 F.3d at 299.

With respect to evaluating whether counsel's performance was deficient under Strickland, the "proper standard . . . is that of 'reasonably effective assistance.'" Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005).  A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the

circumstances.  Id.  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel.  Id.  In scrutinizing counsel's performance, courts "must be highly deferential [and] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.  Again, the habeas petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-689).

Under Strickland, a habeas petitioner must also affirmatively demonstrate that counsel's deficient performance prejudiced his defense.  Strickland at 692-93.  "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding."  Id. at 693.  A petitioner must instead demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland at 694; see also Shedrick, 493 F.3d at 299.

In addition, "[w]hen a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below <u>Strickland's</u> standard.'" <u>Grant v. Lockett</u>, 709 F.3d 224, 232 (3d Cir. 2013) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011)). "Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.'" <u>Id.</u> (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011)).

A. <u>Ground Two – Failure to Utilize Preemptory Challenges to Remove Jurors with Connections to Law Enforcement</u>

Petitioner, in Ground Two, asserts that his trial counsel was ineffective based on Mr. Roddy's "failure to exercise [preemptory] challenges to remove jurors with connection[s] to law enforcement." (See Pet., ¶ 12 at Ground Two.) Petitioner presents the following facts in support of that claim:

> Petitioner was accused of attempting to murder multiple police officers. Many prospective jurors, however, were connected with law enforcement, thereby likely prejudicing them against [P]etitioner. During jury selection, [P]etitioner instructed trial counsel to use peremptory challenges to remove all jurors with law-enforcement affiliations. Counsel refused to do so, notwithstanding that counsel had 18 peremptory challenges remaining. Through counsel's omission, 8 jurors with close law-enforcement affiliations sat on the jury that ultimately convicted [P]etitioner. Two of these jurors had an affiliation with officers involved in the actual trial. Counsel's failure to use peremptory

challenges to remove the 8 jurors with law-enforcement
affiliations was inexcusable.

(Pet. ¶ 12, Ground Two, ECF No. 1.)  The Supplemental Reply
Brief submitted by Petitioner's habeas counsel echoes
Petitioner's general sentiment but focuses, specifically, on
trial counsel's failure to "use available peremptory challenges
to remove [two particular jurors, i.e.,] Jurors No. 5 and No.
9." (Pet'r's July 14, 2016 Supp. Reply Br. at 9, ECF No. 17.)
Petitioner's September 5, 2016, declaration, which he included
in his pro se motion to expand the record, similarly focuses on
his trial counsel's failure to excuse Juror Nos. 5 and 9.[6] (See
ECF No. 20-1 at ¶¶ 5-6.)

i. Jury Selection at Petitioner's Criminal Trial

Before addressing the substantive claims raised by
Petitioner in Ground Two, this Court notes the following about
the jury selection proceedings conducted during Petitioner's
trial:  Sixteen jurors were ultimately selected to serve as
jurors/alternates.  (See Jan. 14, 2008 Jury Selection Tr. at
12:10:12, ECF No. 4-2.)  Prior to excusing any prospective
jurors, Judge Donio provided a brief overview of the case and
made clear that Petitioner was being charged with the attempted
murder of three police officers.  (Id. at 7:7-10:12.)

---

[6]  This Court acknowledges this fact notwithstanding that it
denied Petitioner's motion to expand the habeas record to
include Petitioner's supplemental pro se declaration.

In addition to asking general questions about each prospective juror's background, i.e., professional occupation, hometown, extracurricular interests, bumper stickers[7] on vehicles, etc., all potential jurors were presented with a series of thirty-four questions designed to illuminate potential biases they may have had based on the particular facts of Petitioner's case. (Id. at 15:20-23:10). These questions, included, inter alia, whether each prospective juror knew any of the witnesses who would be testifying at trial (id. at 16:11-23-10), whether that individual was predisposed to afford greater weight to the testimony of police officers (id. at 19:9-19), and whether anything about Judge Donio's explanation of the case would interfere with that individual's ability to be fair and impartial. (Id. at 21:15-18). Each potential juror was also specifically asked "whether you or any family member or very close friend ever worked for a law enforcement agency, such as the prosecutor, the FBI, DEA, sheriff's office, jail, prison, either in New Jersey or another state."[8] (Id. at 19:4-8.)

---

[7]  In addition to bumper stickers, Petitioner's trial counsel specifically requested that Judge Donio also ask prospective jurors if they had any police medallions on their car, as that information would also suggest a bias in favor of police. (Jan. 14, 2008 Jury Selection Tr. 34:25-35:3, ECF No. 4-2.)

[8]  In light of this broadly phrased question, it is unsurprising that many jurors responded in the affirmative. This Court, however, is unable to confirm Petitioner's claim that eight jurors with law enforcement affiliations were seated as jurors.

In response to this comprehensive set of questions, Juror No. 5, who worked as a juvenile detention officer, indicated that she "used to work with [Officer Christopher Leary] at the courthouse" when Officer Leary was a probation officer. (Id. at 94:17-24, 95:22-23, ECF No. 4-2.) Juror No. 5 also noted that she knew an "Officer Loder" who "used to be a county officer[.]" (Id. 95:4-15.) Judge Donio asked if Juror No. 5's prior history with Officer William Loder "would affect [her] ability one way or another to weigh his testimony?" (Id. 95:24-96:1.) In response, Juror No. 5 made clear that it would not, and further added that she believed criminal defendants were entitled to a presumption of innocence and that she would decide Petitioner's case based solely on the facts. (Id. at 96:2-15.)

Juror No. 9 indicated that she knew Atlantic City Police Officer Joseph Falcone, who was one of the other police officers who testified at trial. (Id. at 50:24-51:7.) Juror No. 9 further made clear, however, that she rarely saw Officer Falcone, did not socialize with him, and that she would not give undue weight to his testimony. (Id. at 51:2-11.) Juror No. 9

---

None of the numerous filings presented by Petitioner pinpoint the specific jurors Petitioner is alluding to. Based on this Court's review of the voir dire proceedings, it appears that at least several of the jurors selected did have some relationship with persons affiliated with law enforcement. In any event, for the reasons detailed, infra, the fact that eight jurors had "law enforcement affiliations," even if true, fails to provide a basis for habeas relief.

also noted that her ex-husband worked as a civilian supervisor under the direction of the Atlantic City Police Department, and that this fact would not affect her ability "to judge this case fair." (Id. at 51:19-52:2.) Juror No. 9 expressly indicated that because she was a nurse, she had a tendency "to weigh facts and not suppositions" and also unequivocally stated that she believed she could "be a fair and impartial juror." (Id. at 52:17-23.)

The transcript of jury selection proceedings makes clear that Judge Donio gave thought and attention to the responses each prospective juror provided during voir dire, that he asked potential jurors individualized, specific follow-up questions to further probe for bias, and that he carefully considered whether each of those individuals would be able to be fair and impartial in light of those responses. Indeed, while the trial judge saw no need to excuse Juror Nos. 5 and 9, he did excuse one juror who "travel[ed] in the same circle of and [was] acquaintances with [Officer] Constantino" (id. at 76:17-77:16), and excused another juror who knew Officer Loder and had a number of family members who worked in law enforcement. (Id. at 93:17-94:11). Judge Donio also excused at least eight other prospective jurors who had affiliations with law enforcement. (Id. at 36:19-37:3, 44:11-45:17, 53:18-54:19, 58:4-59:21, 74:15-76:16, 86:24-87:25, 93:2-15).

Although Petitioner's trial counsel, Mark Roddy, similarly declined to use peremptory challenges on Juror Nos. 5 and 9, he did exercise two peremptory challenges to excuse: (1) a divorced father of two, who worked as a floor supervisor at the Borgata Casino (id. at 97:15-26:5); and (2) a married father of two from Egg Harbor Township whose brother was a police officer. (Id. at 37:13-40:3, 97:15-26:5.)  It does not appear that counsel felt the use of additional preemptory challenges was necessary. Indeed, Mr. Roddy, at the conclusion of voir dire, expressly stated that "we're[, i.e., both Mr. Roddy and Petitioner] satisfied with the jury the way it is." (Id. at 101:16-17.)

ii. The State Courts' Juror Bias-Related Rulings

During PCR proceedings, Judge Donio considered, inter alia, Petitioner's claim that Mr. Roddy was ineffective for failing to use peremptory challenges to excuse "numerous jurors who had some type of affiliation with law enforcement." (See Pet'r's PCR Br. at 17, ECF No. 4-20 (capitalization in original omitted).)  Judge Donio noted that based on his personal observations, it fully appeared that "[Petitioner] was heavily involved [in the jury selection process]" and did not "in any way, shape, or form [provide Judge Donio with any reason to believe] that [Petitioner] was dissatisfied [with] the jury." (May 24, 2013 PCR Hr'g Tr. 54:24-55:2, ECF No. 4-15; accord id. at 36:10-17 (Petitioner "was very involved in jury selection,

talking back and forth with Mr. Roddy. This was not a jury

selection where the defendant sat there and the lawyer sat here

and they had no communication, no discussion. Many times . . .

they said to me give us a second and they discussed different

things back and forth, back forth, back and forth, and I

remembered it.").)

Judge Donio also noted that while Mr. Roddy only used two

peremptory challenges, the assistant prosecutor exercised a

similarly sparse total of four. (Id. at 54:11-13.) Judge Donio

credited the limited number of challenges actually used to "the

in-depth voir dire that we did." (Id. at 54:13-14.) Judge

Donio further explained that "[w]e asked open-ended questions

and I think that the jurors that came with their answers, the

people that had to be struck for cause were struck, and that

after that there was a limited number [of] challenges." (Id. at

54:20-24.)

The Appellate Division, in its subsequent opinion affirming

Judge Donio's denial of Petitioner's PCR petition, afforded

great weight to the foregoing points. Blank, 2014 WL 6474347,

at *2. With respect to Petitioner's assertion that Mr. Roddy

was ineffective for failing to strike additional jurors who had

affiliations with law enforcement, the Appellate Division

expressly noted that "[t]he fact that a potential juror has

relatives in law enforcement does not automatically require the

removal of that juror for cause." Id. (citation omitted). As further observed by the Appellate Division:

> all the jurors who [Petitioner] now claims should have been stricken were questioned by the trial judge and all were candid about their relationships with law enforcement as well as their ability to impartially determine [Petitioner's] guilt or innocence in this matter. [Petitioner's] claim that these jurors were biased against him and should have been excused is pure speculation and totally unprovable. [Petitioner's] active participation in jury selection, as observed by Judge Donio, further weakens [Petitioner's] argument.

Id. In light of those considerations, the Appellate Division ultimately concluded that Petitioner failed "to meet his burden under [Strickland] of demonstrating that he was denied effective assistance of counsel at trial because his lawyer failed to exercise additional peremptory challenges to remove all jurors with any connection to law enforcement." Id.

iii. Relevant Federal Precedent Regarding Jury Selection

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is applicable to the States through the Fourteenth Amendment. See Morgan v. Illinois, 504 U.S. 719, 726 (1992); Duncan v. Louisiana, 391 U.S. 145 (1968).

Relevant Supreme Court precedent makes clear that jurors are presumed to be impartial and are required to "render a

verdict based on the evidence presented in court." <u>Irvin v.</u>
<u>Dowd</u>, 366 U.S. 717, 723 (1961). "[D]ue process does not[,
however,] require a new trial every time a juror has been placed
in a potentially compromising situation." <u>Smith v. Phillips</u>,
455 U.S. 209, 217 (1982). Instead, "[d]ue process means a jury
capable and willing to decide the case solely on the evidence
before it[.]" <u>Id.</u> In that regard, "[v]oir dire examination
serves to protect the right to an impartial jury by providing
the parties a means of uncovering juror bias." <u>United States v.</u>
<u>Mitchell</u>, 690 F.3d 137, 141-42 (3d Cir. 2012) (citing, <u>inter</u>
<u>alia</u>, <u>J.E.B. v. Alabama ex rel. T.B.</u>, 511 U.S. 127, 143–44
(1994); <u>Morgan</u> 504 U.S. at 729–30). In other words, "part of
the guarantee of a defendant's right to an impartial jury is an
adequate voir dire to identify unqualified jurors." <u>Morgan</u> at
729. As such, "voir dire must not be so general that it does
not adequately probe the possibility of prejudice." <u>Waldorf v.</u>
<u>Shuta</u>, 3 F.3d 705, 710 (3d Cir. 1993).

In <u>Mu'Min v. Virginia</u>, 500 U.S. 415 (1991), the Court
stressed "the wide discretion granted to the trial court in . .
. areas of inquiry that might tend to show juror bias." <u>Id.</u> at
427. Indeed:

> Absent racial or ethnic bias, or capital punishment
> issues, the Supreme Court has held that trial courts
> have substantial discretion in determining the need for
> specific questions during jury voir dire. <u>See</u> <u>Rosales-</u>
> <u>Lopez v. United States</u>, 451 U.S. 182, 190 (1981);

> Ristaino v. Ross, 424 U.S. 589, 595 (1976) . . . .
> Consequently, under federal law, the trial courts have
> considerable discretion in conducting voir dire;
> however, trial courts must make inquiries relevant to
> disclose actual bias and satisfy the demands of
> fairness. See Butler v. City of Camden, 352 F.3d 811,
> 819 (3d Cir. 2003) (citing United States v. Dansker, 537
> F.2d 40, 56 (3d Cir. 1976), cert. denied, 429 U.S. 1038
> (1977)). Trial judges are afforded discretion in
> conducting voir dire because the "determination of
> impartiality, in which demeanor plays such an important
> part, is particularly within the province of the trial
> judge." Ristaino, 424 U.S. at 594 (citation omitted).
> A trial judge's factual findings during jury voir dire
> are entitled to a presumption of correctness on habeas
> review. See Wainwright v. Witt, 469 U.S. 412, 428
> (1985).

Dirago v. Hendricks, No. 1:03-cv-5943 (RBK), 2005 WL 3113429, at

*8 (D.N.J. Nov. 17, 2005). "Bias that emerges in response to

voir dire questioning can lead to excusal of a juror for cause

or may facilitate the parties' intelligent exercise of

peremptory strikes." Mitchell 690 F.3d at 141-42 (citing

McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554

(1984)).

With respect to voir dire-related ineffective assistance of

counsel claims, specifically, at least one federal circuit court

has stated that an "attorney's actions during voir dire are

considered to be matters of trial strategy, which cannot be the

basis of an ineffective assistance claim unless counsel's

decision is so ill chosen that it permeates the entire trial

with obvious unfairness." DeLozier v. Sirmons, 531 F.3d 1306,

1323 (10th Cir. 2008); accord Morgan 504 U.S. at 729 (voir dire

proceedings are "subject to the essential demands of fairness.")
(internal quotation marks and alterations omitted); see also Lin
v. Bartkowski, No. 2:10-cv-5489 (DMC), 2012 WL 3124493, at *31
(D.N.J. Aug. 1, 2012) (relying on standard set forth in DeLozier
to resolve habeas petitioner's voir dire-specific ineffective
assistance of counsel claims).

iv. Application

Petitioner, in Ground Two asserts that his trial attorney's
failure to use peremptory challenges to strike Juror Nos. 5 and
9 "fell below any objective standard of reasonableness for a
criminal defense attorney." (Pet'r's July 14, 2016 Supp. Reply
Br. at 6, ECF No. 17.) This Court has been presented with no
compelling reason to agree.

As an initial matter, based on this Court's review of the
transcript of jury selection proceedings, it is clear that the
voir dire conducted by Judge Donio was more than adequate for
purposes of identifying inherently biased prospective jurors.
As more thoroughly detailed supra, each prospective juror was
presented with a litany of specific questions designed to
uncover potential biases in light of the particular facts of
Petitioner's case. When any such juror responded in the
affirmative to these initial questions, Judge Donio asked that
potential juror additional, targeted questions to further probe
for bias. In other words, the voir dire conducted by the trial

court was in no way "so general that it [failed to] adequately probe the possibility of prejudice." Waldorf, 3 F.3d at 710.

Ultimately, Judge Donio excused at least ten jurors based on their voir dire responses. He did not, however, see any reason to excuse Juror Nos. 5 and 9. The transcript of voir dire proceedings supports that decision. As more fully detailed above, Juror No. 5 candidly revealed that she knew Officers Leary and Loder through her work as a juvenile detention officer, that her prior relationships with them would not affect her ability to fairly assess their testimony, and that she would decide Petitioner's case solely on the facts. Likewise, Juror No. 9 indicated that her past relationship with Officer Falcone would not affect her ability to fairly judge Petitioner's case, that she was a fact-based decision maker, and that she would be a fair and impartial juror. The record therefore fully suggests that these two jurors "were candid about their relationships with law enforcement as well as their ability to impartially determine [Petitioner's] guilt or innocence in this matter."[9] Blank, 2014 WL 6474347, at *2.

The transcript of jury selection proceedings further makes clear that Petitioner's trial counsel was actively involved in

---

[9] Likewise, this Court has not been presented with any reason to conclude that either juror's "overall demeanor" in the courtroom provided any basis for the trial court to conclude otherwise.

the voir dire process, that he utilized two peremptory challenges _after_ the trial court had already excused at least ten jurors, and that he expressly indicated that he and Petitioner were satisfied with the jury that was ultimately empaneled – inclusive of Jurors No. 5 and 9 – as a result of the voir dire proceedings.

In sum, there is nothing in the record which provides this Court with any reason to conclude that Juror No. 5 or Juror No. 9 – or any of the jurors selected for Petitioner's trial – decided the case based on anything other than the evidence presented at trial.[10]  Instead, the foregoing facts wholly suggest that Petitioner received ample opportunity to identify unqualified jurors and that his right to an impartial jury was in no way compromised as a result of the jury selection proceedings conducted by the trial court.  As such, Mr. Roddy's decision to empanel Jurors Nos. 5 and 9 was not "so ill chosen that it permeate[d] the entire trial with obvious unfairness." _DeLozier_, 531 F.3d at 1323; _see also_ _Jenkins v. Bartkowski_, No. 3:10-cv-4972 (MLC), 2014 WL 2602177, at *16 (D.N.J. June 11, 2014) (because there was "no evidence of jury bias to support a

---

[10]  To be clear, Petitioner readily conceded through trial: (i) that he shot Officers Leary and Constantino with Officer Constantino's firearm as those officers attempted to arrest him; and (ii) and that he subsequently used that weapon to fire one bullet at Officer Loder several hours later as he continued to evade arrest.

Sixth Amendment violation, Petitioner cannot show the necessary prejudicial impact under the second prong in Strickland.");

Dirago, 2005 WL 3113429, at *12 ("absent an error in the voir dire, there is nothing to support a claim of ineffective assistance of counsel for failing to object [to the general voir dire conducted by the court].").

This Court likewise finds Petitioner's assertion that "Jurors No. 5 and No. 9 had an implied bias against [Petitioner]" to be both legally incorrect and otherwise unpersuasive. (Pet'r's July 14, 2016 Supp. Reply Br. at 6, ECF No. 17 (emphasis added).) To be clear, "implied bias" is "bias conclusively presumed as [a] matter of law[.]"[11] Mitchell, 690 F.3d at 142 (citing United States v. Wood, 299 U.S. 123, 133 (1936)). It is applicable to "certain narrowly-drawn classes of jurors [that] are highly unlikely, on average, to be able to render impartial jury service despite their assurances to the contrary." Id. A finding of implied bias would be justified where a "juror is an actual employee of the prosecuting agency, [or] a close relative of one of the participants in the trial or

---

[11] "Actual bias, by contrast, is "the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." Mitchell, 690 F.3d at 142 (citation omitted). "All members of the venire are subject to examination for actual bias, which may become apparent when a venireperson admits partiality or may be inferred from responses to voir dire questioning." Id. (citations omitted).

the criminal transaction, [or] was a witness or somehow involved in the criminal transaction." Phillips, 455 U.S. at 222 (O'Connor, J., concurring).

The Third Circuit's decision in Mitchell, 690 F.3d 137, however, makes clear that the neither Juror No. 5 nor Juror No. 9 fit within the narrowly-drawn classes of jurors for whom the doctrine of implied bias is applicable. Indeed, Mitchell holds that "[t]he law . . . does not categorically impute bias to coworkers of key Government witnesses." Id. at 150. In so holding, the Mitchell Court rejected defendant's claim that an employee of the Virgin Islands Police Department who worked with government witnesses who testified at his criminal trial should have been, as a matter of law, categorically disqualified from serving as a juror. See id. at 149 ("To the extent [defendant] urges us to fashion a new category of implied bias for coworkers of police officers who testify as witnesses in a criminal trial, we decline to do so."). Mitchell also expressly states "that employment at a police department, standing alone, does not justify an implication of bias." Id. (citing Dennis v. United States, 339 U.S. 162, 171-72 (1950); United States v. Polichemi, 219 F.3d 698, 704 (7th Cir. 2000)).

Pursuant to Mitchell, there is no basis to conclude that that either Juror No. 5 or Juror No. 9 should have been categorically disqualified from serving as a juror at

Petitioner's criminal trial pursuant to the doctrine of implied bias. <u>Mitchell</u> also comports with the Appellate Division's finding that "the fact that a potential juror has relatives in law enforcement does not automatically require the removal of that juror for cause." <u>Blank</u>, 2014 WL 6474347, at *2.

In light of the foregoing, it cannot be said that the Appellate Division's determination that Petitioner failed "to meet his burden under [<u>Strickland</u>] of demonstrating that he was denied effective assistance of counsel at trial because his lawyer failed to exercise additional peremptory challenges to remove all jurors with any connection to law enforcement[,]" <u>see id.</u>, represents an unreasonable application of <u>Strickland</u>. As such, the Court will deny habeas relief as to Ground Two.

B. <u>Ground Three – Failure to Retain an Expert</u>

Petitioner, in Ground Three, asserts that his trial counsel was ineffective based on Mr. Roddy's failure to present expert witnesses who would have testified at trial that Petitioner's handcuffs were shot from close range. Petitioner presents the following facts in support of that claim:

> During his trial, [P]etitioner testified that he was assaulted by two police officers; that he was handcuffed to a fence during the assault; and that he freed himself from the fence by picking up an officer's gun (which was laying on the ground) and shooting the handcuffs at close range. The handcuffs worn by [P]etitioner were introduced at his trial. It was undisputed that those handcuffs featured an indentation caused by a bullet. However, the police and prosecutor contended that the

handcuffs were shot not by [P]etitioner at close range
but by an officer who was shooting at [P]etitioner from
far away.

(Pet. ¶ 12, Ground Three, ECF No. 1.)

Petitioner asserts that "resolution of this factual dispute
was crucial not only to [P]etitioner's self-defense claim but to
the overall credibility of [P]etitioner and the police
officers." (Pet. ¶ 12, Ground Two, ECF No. 1.) Petitioner
further asserts that his trial counsel's failure "to present an
expert witness to prove that the handcuffs were indeed shot from
close range. . . . lacked strategic justification and was
highly prejudicial." Id.

Petitioner's Ground Three argument was considered – and
rejected – during PCR proceedings. (See generally May 24, 2013
PCR Hr'g Tr. 47:19-54:6, ECF No. 4-15). Judge Donio, then
sitting as the PCR judge, noted that having an expert opine on
whether "the handcuff was shot off from 2 feet or from 50 feet"
was irrelevant to the principal issue of why Petitioner
"pick[ed] up [Officer Constantino's] gun and use[d] deadly force
and [shot] two cops." (Id. 49:9-10, 50:21-23-11.) In light of
that reality, Judge Donio rejected Petitioner's assertion that
but-for trial counsel's failure "to obtain [an] expert report .
. . the jury would have found that [Petitioner] acted in self-
defense and not have convicted him[.]" (Id. at 48:7-10.)
Ultimately, Judge Donio found that Petitioner failed to

demonstrate prejudice under <u>Strickland</u> because the introduction of the expert testimony "would [not] have changed the outcome of the case." (<u>Id.</u> at 52:6-7.)

The Appellate Division thereafter considered "[Petitioner's] claim that his trial counsel was ineffective for failing to present an expert to corroborate his claim of self-defense." <u>Blank</u>, 2014 WL 6474347, at *3. The Appellate Division first noted: (i) that New Jersey case law makes clear that "[s]elf-defense in response to an arrest is thus extremely hard to demonstrate[,]" <u>id.</u> (citation omitted); (ii) that Petitioner, on appeal, "concede[d] that the expert report proffered to Judge Donio by PCR counsel was not helpful to the defense[,]" <u>id.</u> at *4; and (iii) and this report ultimately failed to support Petitioner's underlying factual claim that the handcuffs on his hand were shot from a distance of two feet as it expressly stated that "[b]ased on the condition of the handcuffs, no determination can be made at what distance the bullet was fired." <u>Id.</u> at *4 n.2. In light of the foregoing considerations, the Appellate Division ultimately ruled that Petitioner failed to "allege specific facts sufficient to demonstrate counsel's alleged substandard performance[,]" and similarly failed to "demonstrate the reasonable likelihood of succeeding under the test set forth in <u>Strickland v. Washington</u>[.]" <u>Id.</u> at 4.

Ground Three of Petitioner's habeas petition fails to provide a basis for this Court to grant habeas relief. As an initial matter, counsel's failure to call a witness is entitled to deference from this Court because it "is precisely the sort of strategic trial decision that Strickland protects from second-guessing." Henderson v. DiGuglielmo, 138 F. App'x 463, 469 (3d Cir. 2005) (citing Sanders v. Trickey, 875 F.2d 205, 212 (8th Cir. 1989)). More importantly, Petitioner has failed to show any prejudice that has resulted from counsel's failure to present an expert witness to opine on the distance from which his handcuffs were shot.

First, this Court wholly agrees with the PCR court that the issue of whether the handcuffs placed on Petitioner were shot from two feet or from fifty feet is irrelevant to the principal issues underlying Petitioner's conviction for the attempted murder of three police officers. This Court is therefore unable to conclude that the introduction of expert evidence at trial demonstrating that Petitioner's handcuffs were shot from a distance of two feet would have, in any way, changed the outcome of his case. Moreover, this Court agrees with the Appellate Division that Petitioner failed to establish that his trial counsel's performance was substandard for failing to retain an expert who would opine that Petitioner's handcuffs were shot at close range, particularly where the expert report subsequently

proffered by Petitioner during PCR proceedings was inconclusive on the issue of at what distance Petitioner's handcuffs were shot.  See Green v. Warren, No. 2:12-cv-6148 (ES), 2013 WL 6865420, at *18 (D.N.J. Dec. 20, 2013) (petitioner failed to establish that his counsel was ineffective where it was unclear whether expert reports would have been favorable); accord Paulino v. Balicki, No. 2:10-cv-5193 (DMC), 2014 WL 202580, at *12 (D.N.J. Jan. 15, 2014).

Accordingly, under the highly deferential standard of review governing ineffective assistance of counsel claims in § 2254 habeas matters, this Court is unable to find that the state courts' determination that Petitioner was not prejudiced by the failure of his trial counsel to retain an expert to opine on the distance at which Petitioner's handcuffs were shot represents an unreasonable application of Strickland and its progeny, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  As such, the Court will deny habeas relief as to Grounds Three.

4. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of the claims, the Court shall deny Petitioner a certificate of appealability.

V. <u>CONCLUSION</u>

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.


Dated: April 23, 2018                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.